IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **RENE POMALES, on behalf of himself and all others similarly situated,** | § § § | |
| | § | **Civil Action No. _____** |
| **Plaintiff,** | § § | |
| **v.** | § § | (Removed from the Superior Court of Hampden County, Massachusetts, Cause No. 1979-CV-00939) |
| **AT&T MOBILITY SERVICES LLC,** | § § | |
| **Defendant.** | § | |

### DEFENDANT'S NOTICE OF REMOVAL

Defendant AT&T Mobility Services LLC ("AT&T"), pursuant to 28 U.S.C. §§ 1441 and 1446, files this Notice of Removal of the above-captioned cause to the United States District Court for the District of Massachusetts, and respectfully submits the following statement as the grounds for removal:[1]

### I.  BACKGROUND

####   A.  The State Court Action

1. On December 10, 2019, Plaintiff Rene Pomales filed a lawsuit in the Superior Court of Hampden County, Massachusetts, styled *Rene Pomales v. AT&T Mobility Services LLC*, Cause No. 1979-cv-00939 asserting he was denied overtime wages in violation of the Massachusetts Wage Act and Sunday and holiday premiums in violation of Massachusetts's "Blue Laws." *See* Exhibit A.

2. On January 10, 2020, AT&T's Legal Department received a copy of Pomales's Class Action Complaint, Tracking Order, and Summons in the lawsuit from Pomales's counsel

---

[1] By filing this Notice of Removal, AT&T does not waive any objections or other defenses that are or may be available to it, including without limitations those related to improper service and failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). *See In re Lupron Mktg. & Sales Practices Litig.*, 245 F. Supp. 2d 280, 302 (D. Mass. 2003).

via certified mail. *See* Declaration of Brenda Adams at ¶3, attached as **Exhibit B**. No proof of service on AT&T has been filed on the Court's docket. Plaintiff has not effectuated proper service of process on AT&T, and AT&T has not yet answered the Complaint. *See* Fed. R. Civ. P. 4(c)(2).

3. No orders have been signed by the state court judge. A true and correct copy of the Court's Docket Sheet for the state court case is attached as **Exhibit C**. As required by 28 U.S.C. § 1446(a), copies of the Complaint, summonses, other pleadings and orders and other materials received by AT&T are attached hereto as **Exhibit A**. Pursuant to Local Rule 81.1(a), within twenty-eight (28) days after the filing of this Notice of Removal, AT&T will file attested copies of all records and proceedings, as well as all docket entries in the State Court Action.

B. **The Named Plaintiff and The Putative Class**

4. Pomales worked for AT&T as a Retail Sales Consultant at an AT&T retail store from October 12, 2018 until his resignation on July 1, 2019. Ex. A-1, Cmplt. at ¶9; Ex. B at ¶4. Pomales claims AT&T failed to pay him and other AT&T commission-earning sales employees in Massachusetts overtime pay and premium pay for hours worked on Sundays and holidays pursuant to M.G.L. c. 136 § 6, c. 149, § 148, and c. 151, § 1B. *Id.* He purports to bring and maintain this action as a class action under Mass. R. Civ. P. 23 and Mass. Gen. L. c. 149 § 150. *Id.* at ¶20.

5. Pomales defines the putative class as "former and current non-exempt employees, who have worked on a base/commission basis, and have worked over forty hours during a week and/or on at least one Sunday or covered holiday in Massachusetts" from the filing of his lawsuit to three years prior—December 10, 2016 and December 10, 2019. *Id.* In 2019 alone, AT&T employed 492 sales employees in Massachusetts who earned commissions. Ex. B at ¶5. Most of

these employees, including Pomales, are members of a union and subject to a collective bargaining agreement ("CBA"). *See Id.*; Ex. B-1 (copy of the CBA governing Pomales's employment with AT&T).

6. As unionized employees, Pomales and the putative class members are subject to the provisions of the CBA addressing scheduled hours, breaks, compensation, overtime and other premium pay, and grievance procedures. Ex. B at ¶4; B-1. For example, the CBA provides for:

- A robust grievance procedure. Ex. B-1 at 9-13.

- Permitted break times based on hours worked. *Id.* at 18.

- The rates of pay and progression wage scales for full time employee's *Id.* at 30.

- Starting pay rates and promotion pay rates. *Id.* at 30

- AT&T's right to develop incentive programs and AT&T's requirement to notify the union prior to making a change in its incentive programs. *Id.* at 31.

- One and one-half times the regular rate of pay for all hours worked in excess of eleven hours in a workday. *Id* at 32.

- An entitlement to on-call pay. *Id.*

- Premiums for work performed on Sunday. *Id.*

- Differential pay based on certain criteria. *Id.*

## II. TIMELINESS AND VENUE

7. AT&T's Legal Department received a copy of Pomales's Original Complaint on January 10, 2020. *See* Ex. B at ¶3. Therefore, this Notice is timely filed pursuant to 28 U.S.C. § 1446.[2] Moreover, the United States District Court for the District of Massachusetts embraces the

---

[2] Thirty days after January 10, 2020 falls on February 9, 2020. Because February 9, 2020 was a Sunday, the time period is extended to the subsequent business day, February 10, 2020. Fed. R. Civ. P. 6(a) (noting that if a deadline falls on a Saturday, Sunday, legal holiday, or a day when the clerk's office is inaccessible, the time period is extended "until the end of the next day which is not one of the aforementioned days"). Federal Rule of Civil Procedure 6(a) applies to "any applicable statute," including the proper deadline for removal under 28 U.S.C. § 1446(a). *See, e.g., Wells v. Gateways Hosp. & Mental Health Ctr.*, 76 F. 3d 390 (9th Cir. 1996) (using Rule 6(a) to

county in which the state court action is now pending. Thus, this Court is a proper venue for this action pursuant to 28 U.S.C. §§ 124(a)(2) and 1446(a). A true and correct copy of AT&T's Notification of Removal will be filed with the Clerk for the Superior Court of Hampden County, Massachusetts, and is attached as **Exhibit D**.

### III. FEDERAL QUESTION JURISDICTION APPLIES BECAUSE POMALES'S CLAIMS ARE PREEMPTED BY FEDERAL LAW

8. Removal of Pomales's case is proper under 28 U.S.C. § 1331 because the Complaint presents a federal question under Section 301 of the Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 185. Substantive federal principles permit removal under federal question jurisdiction where at least one of a plaintiff's claims is preempted by § 301. *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 209 (1985).

9. Under the doctrine of complete preemption, "if a federal cause of action completely preempts a state cause of action, any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987); *Franchise Tax Bd. v. Constr. Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 24 (1983). Therefore, "any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Caterpillar*, 482 U.S. at 393.

10. Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, possesses this preemptive force. *See Franchise Tax Bd.*, 463 U.S. at 23. As the Supreme Court has repeatedly explained, Section 301 preemption is rooted in the belief that the interpretation and application of CBAs must be subject to a uniform body of law. *Allis–*

---

extend removal filing deadline from thirtieth day, which landed on a Sunday, to the following Monday); *Medina v. Wal-Mart Stores, Inc.*, 945 F.Supp. 519, 520 (W.D.N.Y. 1996) (thirtieth day after service fell on a Saturday, so the last day defendant could file a notice of removal became the following Monday).

*Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985). Thus, "[i]f the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law . . . is pre-empted." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 405-06 (1988). Preemption applies as long as the state law claim "plausibly can be said to depend on the meaning of" or "arguably hinges upon an interpretation of" the CBA. *Cavallaro v. UMass Memorial Health Care, Inc.*, 678 F.3d 1, 8 (1st Cir. 2012) (quoting *Flibotte v. Pa. Truck Lines*, Inc., 131 F.3d 21, 26 (1st Cir. 1997)) (emphasis added).

11. Courts have routinely applied this principle of Section 301 preemption in Massachusetts Wage Act cases if the determination of whether any wages are owed to a plaintiff "depends at least arguably on interpretation and application of the CBA at issue." *Clee v. MVM, Inc.*, 91 F. Supp. 3d 54, 59 (D. Mass. 2015) (holding claim under Massachusetts Wage Act preempted by Section 301 because CBA interpretation required); *Rueli v. Baystate Health, Inc.*, 835 F.3d 53, 64 (1st Cir. 2016) (same); *Cavallaro v. UMass Mem'l Healthcare, Inc.*, 678 F.3d 1, 8 (1st Cir. 2012) (finding plaintiffs' wage claim preempted because it required an interpretation of the what the CBA provided as wages); *Hamilton v. Partners Healthcare Sys., Inc.*, 209 F. Supp. 3d 397, 411 (D. Mass. 2016) ("Here, because plaintiff's claims 'assert a failure to pay wages,' they 'require both interpretation of the CBA provision categorizing hours and the associated wage and a determination of how those CBA terms integrate with other statements by the defendants.'").

12. Here, Pomales's claims will require an interpretation of the CBA that governed his employment with AT&T to determine issues including, without limitation: whether additional wages are owed, whether additional compensation provided by the CBA offsets any deficiency created by other uncompensated time, how many compensable hours he worked,

whether he followed proper procedure in requesting payment for hours worked over 40, on Sundays and on holidays, whether such payment was "unreasonably withheld," and his "regular rate." *See* Ex. B-1 at 30-32. For instance, determining whether AT&T failed to pay required overtime premiums will necessarily require an analysis of the wages AT&T agreed to pay under the CBA and whether these payments complied with M.G.L. ch. 149 §§ 148, 150. Additionally, the court or jury will have to analyze whether payments made under the CBA, above and beyond what is required under state wage and hour law, offset any wages owed. *See Cavallaro*, 679 F.3d at 8 (finding wage claims required interpretation of CBA provisions because "additional compensation provided by the CBA—say, premium pay above state mandatory rate, or differential pay for certain shifts—may offset any deficiency created by other uncompensated time for purposes of satisfying state minima."); *Hamilton*, 209 F. Supp. 3d at 411 (finding LMRA preemption because the plaintiff's statutory overtime claim would require interpretation of the CBA including "shift differentials, weekend premium pay, or on-call pay.").

13. Pomales's claims are also subject to the robust grievance procedure in the CBA. Article 7 of the CBA provides for a robust grievance procedure, and Articles 8 and 9 provide for mediation and arbitration procedures after the formal grievance process. *See* Ex. B-1 at 9-13. Article 7 states, "[t]he Company and the Union agree that grievances shall be confined to differences arising out of the interpretation or application of the terms or provisions of the agreement, or disciplinary actions for just cause and shall be processed according to the grievance procedure set forth in this Article." *Id.* at 9. Because the CBA expressly covers Pomales's compensation structure, his wage claims are also expressly covered by the CBA's grievance procedure. Courts in the First Circuit have found similar claims to be preempted and properly dismissed when they are subject to a CBA grievance procedure. *See e.g. Rueli*, 835

F.3d at 65-65 (finding plaintiffs' wage action to be completely preempted and properly dismissed when they were subject to a CBA's grievance and arbitration provision); *Hamilton*, 209 F. Supp. 3d at 412 ("Thus, where a CBA includes a grievance and arbitration provision, 'courts ordinarily dismiss claims falling within such provisions—namely, those intertwined with interpretation and application of the CBA-so long as relief can be provided within the CBA process.'").

14. Because Pomales and the putative class members' wage claims cannot be analyzed without interpreting the CBA, Pomales's claims are preempted by Section 301 of the LRMA, and this case is properly removed under 28 U.S.C. § 1331.

## IV. 28 U.S.C. § 1332 JURISDICTION

15. Even if the Court were to find that Pomales's claims are not preempted by the LMRA, which they are, federal jurisdiction is still appropriate under 28 U.S.C. § 1332(a), which provides that the federal district court has jurisdiction over civil actions when the parties are citizens of different states and the amount of controversy exceeds $75,000. 28 U.S.C. § 1332. Both requirements are fulfilled.

### A. Diversity of Citizenship

16. The parties are citizens of different states. Pomales resides in Massachusetts and is therefore a citizen of Massachusetts. *See* Ex. A at ¶1; *Garcia Perez v. Santaella,* 364 F.3d 348, 350 (1st Cir. 2004) ("Citizenship is determined by domicile, which can be established by demonstrating that the individual is physically present in the state and has an intent to remain indefinitely." (internal citations omitted)); *Branyan v. Sw. Airlines Co.*, No. CIV.A. 15-10076-NMG, 2015 WL 1206173, at *2 (D. Mass. Mar. 17, 2015). AT&T Mobility Services LLC is a limited liability company. Its sole member is Cricket Holdco, Inc., a corporation organized in Delaware with a principal place of business in Atlanta, Georgia. Ex. B at ¶3. Accordingly,

AT&T Mobility Services, LLC is a citizen of Delaware and Georgia for purposes of determining citizenship for removal to federal court. *Pramco, LLC ex rel. CFSC Consortium, LLC v. San Juan Bay Marina, Inc.*, 435 F.3d 51, 54 (1st Cir. 2006) ("[C]itizenship of a limited liability company is determined by the citizenship of all its members."). Accordingly, there is diversity of citizenship.

### B. Amount in Controversy

17. In addition, the amount in controversy, exclusive of interest and costs, exceeds $75,000. Generally, the amount of controversy is determined "from the complaint itself, unless it appears or is in some way shown that the amount stated in the complaint is not claimed 'in good faith.'" *Horton v. Liberty Mut. Ins., Co.,* 367 U.S. 348, 353 (1961). In his Complaint, exclusive of costs and interest, Pomales requests the following relief: (1) unpaid overtime wages; (2) Sunday and Holiday premium pay; (3) treble the unpaid overtime and Sunday and Holiday premiums; and (4) attorney's fees. Ex. A-, Cmplt. at 5(b).

18. Where, as here, a plaintiff does not expressly plead a specific amount of damages in his complaint, a defendant must only show a reasonable probability that the amount in controversy exceeds $75,000. *See Amoche v. Guarantee Trust Life Ins. Co.,* 556 F.3d 41, 43 (1st Cir. 2009); *Huston v. FLS Language Ctrs.*, 18 F. Supp. 3d 17, 20-21 (D. Mass. 2014) (applying *Amoche* "reasonable probability" standard to diversity jurisdiction case). "[T]he reasonable probability standard is . . . for all practical purposes identical to the preponderance standard adopted by several circuits." *Amoche*, 556 F.3d at 50.

19. While AT&T denies Pomales's claims in their entirety, it is clear that Pomales, "more likely than not," has put into controversy an amount in excess of $75,000. Pomales has requested relief in damages in excess of $25,000. Ex. A-3, 12/5/2019 Civil Action Cover Sheet

(stating $25,000 in requested damages); *see also* Mass. Gen. Laws Ch. 212, § 3 (requiring that the amount in controversy in superior courts exceed $25,000). In addition, Pomales seeks treble damages and attorney's fees, pursuant to the Massachusetts Wage and Hour Act, Mass. Gen. Laws c. 148-150, which authorizes recovery of such treble damages and attorney's fees by a prevailing party. Cmplt. at 5(b); *see also* Mass. Gen. L. Ch. 149, § 150. Such treble damages and attorney's fees are considered in calculating the amount in controversy. *F.C.I. Realty Trust v. Aetna Cas. & Sur. Co.*, 906 F. Supp. 30, 32 n.1 (D. Mass. 1995) (holding that the possibility of treble damages under Mass. Gen. Laws c. 93A counts towards satisfying the amount in controversy); *Spielman v. Genzyme Corp.*, 251 F.3d 1, 7 (1st Cir. 2001) (reaffirming that when statutes allow for recovery of attorneys' fees by a prevailing party, such attorneys' fees are taken into account in determining the amount in controversy); *Youtsey v. Avibank Mfg.*, 734 F. Supp. 2d 230, 238 (1st Cir. 2010) (holding that when determining whether the amount in controversy meets jurisdictional threshold, claims brought under the Massachusetts Wage and Hour Act, Mass. Gen. L. ch. 149, § 150, must take into account treble damages and reasonable attorney's fees.).

20. In this case, when Plaintiff's request for $25,000 in damages is trebled and attorney's fees are added, the amount in controversy significantly exceeds the jurisdictional threshold. *Vilaythong v. Sterling Software, Inc.*, 353 F. Supp. 3d 87, 93 (D. Mass. 2018) (trebling alleged unpaid overtime based on amount alleged in civil cover sheet to find the amount in controversy exceeds $75,000).

21. Because the parties are completely diverse and the requisite amount in controversy is satisfied, this Court has diversity jurisdiction over this action. 28 U.S.C. § 1332(a).

## V. CLASS ACTION FAIRNESS ACT JURISDICTION APPLIES

22. Pomales's case is also properly removed under the Class Action Fairness Act of 2005 ("CAFA"). CAFA confers jurisdiction upon federal district courts over class actions in which: (1) there are at least 100 proposed plaintiff class members; (2) any plaintiff class member is diverse in citizenship from any defendant; and (3) the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs. 28 U.S.C. § 1332(d). All CAFA requirements are satisfied in this case. This matter is a proposed "class action" as defined by CAFA because it is a case brought by a representative of a putative class and was filed in state court pursuant to a statute or rule authorizing such a class. 28 U.S.C. § 1332(d)(1)(B). Further, no exception to the exercise of federal jurisdiction applies. *See, e.g.*, U.S.C. § 1332(d)(4)(A)-(B). Therefore, removal is proper pursuant to 28 U.S.C. §§ 1441, 1446, and 1453.

### A. Diversity of Citizenship Exists

23. To satisfy CAFA's diversity requirement, a party seeking removal need only show that minimal diversity exists—that is, that one putative class member is a citizen of a state different from that of one defendant. 28 U.S.C. § 1332(d)(2); *Lenahan v. Dick's Sporting Goods, Inc.*, No. As discussed above, Pomales is a citizen of Massachusetts, and AT&T is a citizen of Delaware and Georgia. *Pramco, LLC ex rel. CFSC Consortium, LLC*, 435 F.3d at 54. Therefore, because the parties do not share citizenship, the first requirement for removal under CAFA is met.

### B. The Purported Class Consists of More than 100 Members

24. Pomales's Complaint alleges claims on behalf of himself and a putative class of similarly situated individuals in Massachusetts. Ex. A-1, Cmplt. at 1, ¶20. Specifically, he defines the class as "former and current non-exempt employees, who have worked on a base/commission basis, and have worked over forty hours during a week and/or on at least one

Sunday or covered holiday in Massachusetts" from the filing of his lawsuit to three years prior—December 10, 2016 and December 10, 2019. *Id.* In 2019 alone, AT&T employed 492 commission-earning sales employees in Massachusetts. Ex. B at ¶5.

25. As the number of members of the proposed putative class exceeds 100, the second jurisdictional requirement under CAFA is met. *See* 28 U.S.C. § 1332(d)(5)(B). As the number of members of the proposed putative class exceeds 100, the second jurisdictional requirement under CAFA is met. See 28 U.S.C. § 1332(d)(5)(B).

### C. The Amount In Controversy Requirement Is Satisfied[3]

26. "A defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). Because Pomales seeks treble unpaid overtime wages and premium pay over a three year period on behalf of a class of all AT&T sales employees in Massachusetts— more than 492 individuals, AT&T easily satisfies this burden.

27. Under CAFA, the claims of the individual class members are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest or costs. 28 U.S.C. § 1332(d)(6). The amount in controversy is not "the amount the plaintiff will recover," but rather "an estimate of the amount that will be put at issue in the course of the litigation." *McPhail v. Deere & Co.*, 529 F.3d 947, 956 (10th Cir. 2008). In addition, Congress intended for federal jurisdiction to attach under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the

---

[3] AT&T discusses the purported nature and amount of damages in this lawsuit for purposes of establishing the amount in controversy is more likely than not in excess of the jurisdictional minimum only. AT&T maintains that Pomales's claims are without merit and class treatment is inappropriate. AT&T asserts it is not liable to Pomales or the putative class he claims to represent and denies that Pomales or any of its sales employees have suffered any damage as a result of any act or omission by AT&T. No statement or reference contained herein shall constitute an admission of liability or a suggestion that Pomales will or could actually recover these damages based upon the allegations contained in the Complaint or otherwise.

defendant, and regardless of the type of relief sought (e.g., damages, injunctive relief, or declaratory relief)." S. Rep. No. 109-14, as reprinted in 2005 WL 627977, at *42 (1st Sess. 2005).

28. Where, as here, the plaintiff does not expressly plead a specific amount of damages, a defendant must only show a reasonable probability that the amount in controversy exceeds $5,000,000. *See Sierra v. Progressive Direct Ins. Co.*, No. 12–30020–FDS, 2012 WL 4572923, at *2 (D. Mass. Sept. 28, 2012). Pomales's likelihood of success on the merits is irrelevant to determining the court's jurisdiction because "the pertinent question is what is in controversy in the case, not how much the plaintiffs are ultimately likely to recover." *Manson v. GMAC Mortg., LLC*, 602 F. Supp. 2d 289, 293 n.6 (D. Mass. 2009). Because "questions of removal are typically decided at the pleadings stage where little or no evidence has yet been produced, the issue should be resolved without an extensive fact-finding inquiry or 'mini-trial' about the amount in controversy." *Sierra*, 2012 WL 4572923, at *2 (internal citations omitted). In determining whether the removing defendant has met its burden, courts look first to the Pomales's complaint and then to the defendant's petition for removal. *Williams v. Am. Honda Fin. Corp.*, No. 14-12859-LTS, 2014 WL 5494914, at *3 (D. Mass. Oct. 30, 2014).

29. "In calculating the amount in controversy, a federal court must examine relevant state law to determine the nature and extent of the damages which may be awarded." *Lucas v. Ultima Framingham LLC*, 973 F. Supp. 2d 98, 101 (D. Mass. 2013). Thus, where the statute at issue includes both a damage multiplier and the awarding of attorneys' fees, the "court must apply [those] factor[s] in evaluating the amount in controversy." *Id*. (internal citations omitted).

30. In his Complaint, exclusive of costs and interest, Pomales requests (1) unpaid overtime wages; (2) Sunday and Holiday premium pay; (3) treble the unpaid overtime and

Sunday and Holiday premiums; and (4) attorney's fees. Ex. A. at 5(b). Although AT&T denies that Pomales has defined a proper class, that class treatment of this case is appropriate, or that a proper class can be defined or maintained, AT&T employees holding various commission-earning sales positions in Massachusetts reported 25,119.65 hours of overtime. Ex. B at ¶5. The average hourly rate for these individuals was $19.06 an hour—some employees earning more, and some earning less. *Id.* Accordingly, taking Pomales's allegations as true, the putative class includes at least 492 commission-earning sales employees who would be entitled to millions in unpaid overtime. Ex. B. at ¶5. A reasonable estimate of the amount in controversy, based on Pomales's allegations that AT&T did not pay *any* overtime to him or the putative class, would be $2,154,512.38—without even factoring Sunday and holiday premium pay.[4] Cmplt. at ¶17. Trebled, this amount would be $6,463,537.14[5]. *Paradise v. Eagle Creek Software Services, Inc.*, 989 F. Supp. 2d 132, 139 (D. Mass. 2013) (noting that wage act provides for treble damages and attorneys' fees).

31. The Court must also consider the amount of attorney's fees in controversy to determine whether the jurisdictional amount for removal is satisfied where, as here, attorney's fees are authorized by the statute under which the plaintiff seeks to recover. Mass. Gen. L. c. 149, § 150 (providing for reasonable attorneys' fees to prevailing plaintiff). For instance, a district court in the District of Massachusetts recently approved $1,300,000 as a reasonable attorneys' fee award in wage and hour class action involving claims by retail employees that a retailer failed to pay overtime and Sunday and holiday premium pay in accordance with Massachusetts law to commission-earning sales employees at various retail stores throughout

---

[4] A $19.06 regular rate multiplied by 1.5 is an overtime rate of $28.59 an hour. $28.59 multiplied by the total amount of overtime reported in 2019, 25,119.65 hours, would be $718,170.79. *See* Cmplt. at ¶17. To estimate the total claimed unpaid wages for the three year period preceding the filing of Pomales's Complaint, this amount would be multiplied by 3 years to reach $2,154,512.38.
[5] $2,154,512.38 multiplied by 3 is $6,463,537.14.

Massachusetts. *See Sullivan et al. v. Sleepy's LLC et al.*, No. 1:17-cv-12009-RGS (D. Mass. 2019), Joint Mem. at 63 (D.E. 63) and Order, (D.E. 65) (granting motion for settlement approval). Accordingly, assuming the truth of his allegations, the total amount in controversy could easily exceed $7,000,000.[6] Thus, the $5 million threshold set forth under 28 U.S.C. § 1332(d)(2) is met in this case.

## CONCLUSION

Accordingly, and for the reasons stated in this Notice, Defendant AT&T Mobility Services LLC respect prays that the District of Massachusetts assume jurisdiction of the case *Rene Pomales v. AT&T Mobility Services LLC,* Cause No. 1979-cv-00939 in the Superior Court of Hampden County, Massachusetts and issues such further orders and processes as may be necessary to bring before it all parties necessary for the adjudication of this action.

Dated: February 10, 2020

Respectfully submitted,

AT&T MOBILITY SERVICES LLC

By its counsel,

CONN KAVANAUGH ROSENTHAL PEISCH & FORD, LLP

/s/ Thomas J. Gallitano
Thomas J. Gallitano, BBO #550745
Kathleen R. O'Toole, BBO #680820
Conn Kavanaugh Rosenthal Peisch & Ford, LLP
One Federal Street, 15th Floor
Boston, MA 02110
(617) 482-8200
tgallitano@connkavanaugh.com
kotoole@connkavanaugh.com

NORTON ROSE FULBRIGHT US LLP

---

[6] $6,463,537.14 plus $1,300,000 is $7,763,537.14.

Shauna Johnson Clark (*pro hac vice to be filed*)
Texas State Bar No. 00790977
shauna.clark@nortonrosefulbright.com
Joseph Dole (*pro hac vice to be filed*)
Texas State Bar No. 24097251
joseph.dole@nortonrosefulbright.com
Heather L. Sherrod (*pro hac vice to be filed*)
Texas State Bar No. 24083836
heather.sherrod@nortonrosefulbright.com
1301 McKinney, Suite 5100
Houston, TX 77010-3095
Telephone: (713) 651-5151
Facsimile: (713) 651-5246